# ENOCH W. UNDERWOOD AND OTTO JORGENSEN v. TOWN BOARD OF EMPIRE.[1]

May 12, 1944.

Nos. 33,656, 33,657.

[1]Reported in 14 N. W. (2d) 459.

*Grannis & Grannis,* for appellant.
*Kelly & LeVander,* for respondents.

PETERSON, JUSTICE.

In proceedings under Minn. St. 1941, §§ 163.13 and 160.16 (Mason St. 1927, §§ 2583 and 2588), the appellant town board vacated one mile of a town road in Dakota county from what is known as state aid road No. 6 on the south to the Campion road on the north. At the south end the vacated road intersected state aid road No. 6, and at the north end it terminated at the Campion road. There was no road to the north or to the east from that point. The Campion road extends west where it connects with the Hagney road, which in turn connects with others. About a quarter of a mile from the south end of the vacated part of the road in question there is a bridge across a stream known as Vermillion Creek, which flows easterly across the lands of respondents. The bridge had become in disrepair and impassable shortly before the vacation was made. The road had been in existence about 30 years prior to the date of the

order of vacation. It had been improved by grading and installing culverts and was used by the public for travel.

Respondent Jorgensen owns a 360-acre farm, part of which is situated at the northeast corner of the vacated road and state aid road No. 6 and part of which lies at the southeast corner of the vacated road and the Campion road. The first mentioned part extends along the east side of the vacated road for a distance of about three-fourths of a mile and the second part extends from the intersection one-half mile south along the vacated road and one-half mile west along the Campion road. Jorgensen's buildings are south of the creek on the land on the east side of the vacated road. He used the vacated road and the bridge for travel between the lands on the north and south sides of the creek.

Respondent Underwood owns a 724-acre farm, which lies at the northwest corner of county road No. 6 and the vacated road and extends along the west side of the vacated road from the intersection to the south line of Jorgensen's land on the west side of the vacated road. For a mile and a half beginning on the west side of the Jorgensen land at the southwest corner of the vacated road and the Campion road, Underwood's land extends along the south side of the Campion road. His buildings also are located south of the creek. Underwood has a bridge across the creek on his land, and consequently he seldom, if ever, used the bridge on the vacated road for access to different parts of his land.

The town board did not award the respondents any damages. They took separate appeals from the order of the town board to the district court, where they contended (1) that the order vacating the road was void as being arbitrary and contrary to law and to the best interests of the public, and (2) that by reason of the vacation thereof the respondent Jorgensen suffered $2,500 damages and the respondent Underwood $2,000 damages. The jury returned a verdict finding that the order of the town board was arbitrary, contrary to law and to the best interests of the public, and that the damages sustained by Jorgensen were $3,500 and those by Underwood $2,000. Upon motion of Jorgensen, an order was granted

amending the notice of appeal so as to conform the amount of damages claimed to the evidence and proof adduced at the trial. Upon motion of the town, the court granted judgment notwithstanding the verdict that the order of vacation was valid. Otherwise it denied the motion, as well as one for a new trial. Some further statement of the facts will be made separately in connection with the questions raised on the appeal here.

■ Appellant contends that the court erred in charging the jury that in estimating respondents' damages they should take into consideration inconvenience of access between the parts of their farms lying north and south of the creek. It is urged that the inconvenience, if any, results from deprivation of traveling on a public road and that it "is not different in kind than that suffered by the general public in the use of this road." In support of the contention is cited Winona & St. P. R. R. Co. v. Waldron, 11 Minn. 392 (515), 88 Am. D. 100, where we held that no prejudice resulted to a railroad company in a right of way acquisition proceeding from an instruction that the landowners across whose farm the right of way was taken were in no event entitled to recover any amount as damages for *mere inconvenience* in crossing the track of the railroad in going to or returning from the respective sides of their farm divided by the track and that the jury should not consider any *inconvenience* from crossing the track.

Of course, a landowner is not entitled to recover damages caused by the vacation of a road where they are the same in kind as those sustained by the general public. The right of the public is that of passage, and the deprivation of that right causes the landowner damage of the same sort sustained by the general public, which is *damnum absque injuria*. An abutting landowner has, *in addition* to the public right of travel, the separate and distinct right of access to his property.[2] Where the vacation of a road deprives an abutting landowner of right of access to his land, it causes him damage dis-

---

[2]See, Friede v. Pool, 217 Minn. 332, 14 N. W. (2d) 454, where the importance to purchaser of land under executory contract for deed of right of access to the land by a public road was considered.

tinct from his right to use the road for travel as one of the public. For deprivation of access to his property by vacation of a road, an abutting property owner is entitled to compensation as for an injury peculiar to him and separate and distinct from the damage sustained by the public generally. In re Application of Hull for Vacation of Part of Plat of Hibbing, 163 Minn. 439, 204 N. W. 534, 205 N. W. 613, 49 A. L. R. 320 (writ of error dismissed, 275 U. S. 491, ·48 S. Ct. 33, 72 L. ed. 390); Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L.R.A.(N.S.) 741. The.owner of abutting land is entitled to compensation for the deprivation of access to his land by vacating a road as "damages sustained by reason of * * * vacating any road," within the meaning of § 163.13, subd. 5 (§ 2583, subd. 5). Wendt v. Board of Supervisors, 87 Minn. 403, 92 N. W. 404. In the Wendt case we held that the abutting landowner's right to compensation does not depend upon the fact of or the extent of the use of the road for access; that availability of the road for such use establishes the right. So here, the fact that Underwood made little, if any, use of the vacated road for access to his land does not prevent him from recovering compensation for deprivation of the access afforded him by the road. Here, the award of compensation for deprivation of the right of access by vacating the road was included not as a separate item of damages, but as an element in determining the difference between the value of the land before and after the vacation of the road. It is well settled that, where part of the owner's land is taken, resulting inconvenience affecting the use and the enjoyment of the remainder is proper for consideration as affecting the market value of the land after the taking. State, by Youngquist, v. Wheeler, 179 Minn. 557, 230 N. W. 91; State, by Hilton, v. Lambert, 171 Minn. 369, 214 N. W. 653. In the cited cases the inconvenience was caused by a taking of part of a tract of land. But that circumstance is not controlling. Damages for inconvenience are allowed not because of the manner in which they were caused, but because of the fact that they are sustained as a consequence of the exercise of a public right. Inconvenience sustained by vacation of a road also is a consequence of

the exercise of a public right. The statute (and also the provisions of the constitution [art. 1, § 13] against taking or *damaging* property without first making just compensation, see Vanderburgh v. City of Minneapolis, *supra*) places the right to compensation for damages sustained by *vacating* upon the same basis as those sustained by *establishing* or *altering* any road. Therefore, damages for inconvenience sustained as a result of vacating a road should be allowed the same as where it results from establishing or altering one. No cases have been cited squarely in point on this question, but we think that the conclusion reached accords with the purposes and the evident intention of the statute.

In short, the deprivation of access to his land caused by vacating the road establishes the landowner's right to compensation for damages peculiar to him and separate and distinct from those sustained by the public generally; the resulting inconvenience of access from one part of his land to another, where it results in a decrease in the land's value, is the particular respect in which the deprivation causes damage for which compensation is allowed.

The difference between this case and that of Winona & St. P. R. R. Co. v. Waldron, 11 Minn. 392 (515), 88 Am. D. 100, *supra*, upon which appellant relies, is that in that case the *inconvenience* referred to was one considered separately, in gross as it were, while here it is one in connection with and affecting the use, enjoyment, and value of the land itself. The cited case was distinguished upon this ground in St. Paul & S. C. R. Co. v. Murphy, 19 Minn. 433 (500), and Minnesota Valley R. Co. v. Doran, 17 Minn. 162 (188). In the Murphy case, in distinguishing the Waldron case, we said (19 Minn. p. 447 [516]): "it seems to be conceded that the matter of 'inconvenience in crossing the track' is not to be considered by the jury. That is true; but the matter of convenience in cultivating this tract from respondent's dwelling, in connection with his other lands, is by no means synonymous with 'inconvenience in crossing the track.'" The distinction thus made was deemed to be settled in Sherwood v. St. P. & C. Ry. Co. 21 Minn. 127.

■ It is also urged that respondents were not deprived of the use of the vacated road because it had become impassable prior thereto by the disrepair of the bridge. Jorgensen, because of that fact, sometimes used Underwood's private bridge and sometimes went across the bed of the stream. Under §§ 160.01, subd. 6, 163.01, and 163.07 (§§ 2453, 2571, and 2575), it was the duty of the town board to repair the bridge and maintain the road in a condition fit for public travel. If the road had not been vacated, that duty would have been performed or could have been enforced. The town cannot set up its own nonperformance of duty, its own wrong, as a defense. Until vacated, the road must be regarded as only temporarily unfit for travel, and therefore as one open to travel within a reasonable time. Because, if the road had not been vacated, the bridge would have been repaired so as to make it and the road passable, the disrepair of the bridge was a temporary matter which did not affect the landowners' right to compensation.

■ It is also contended that the court erred in refusing to instruct the jury to determine the money benefits conferred by the vacation, to deduct them from the damages, and to award the difference, if any, as damages, contrary to the provisions of § 160.16, subd. 4 (§ 2588, subd. 4), which provides that the proceedings of the jury in assessing damages on appeal "shall be based upon the same principles which the board [town board] was required to follow in its determination," and § 163.13, subd. 5 (§ 2583, subd. 5), which provides: "In ascertaining the damages which will be sustained by any owner the town board shall determine the money value of the benefits which the establishment, alteration, or vacation, as the case may be, will confer, and deduct the benefits, if any, from the damages, if any, and award the difference, if any, as damages." There was evidence to the effect that upon vacation of the road respondents would each receive the return of the one-half of the land over which the road ran adjoining his land, and one-half of the bridge and culverts. In addition, there were certain benefits such as Jorgensen's ability to farm his land as one tract without any

fences. The land returned to Jorgensen was estimated to be of the value of about $650.

The court instructed the jury to award the difference, if any, between the value of the land with the road before the vacation and the value of it without the road after the vacation, and that, "In arriving at the reasonable market value of each farm after vacation, it is the law that the land, including sand and gravel and soil and that part of the culverts and bridge up to the center of the vacated road reverts to and becomes a part of each adjoining landowner's farm." What the court did was to instruct the jury to strike a difference between the value of the land before and after the vacation, taking into consideration all items that might affect either value. The benefits were not deducted from damages separately ascertained, but in determining the value after the vacation both the benefits and the damages were considered and one set off against the other. By considering the benefits as an element of value after the vacation and by deducting that amount from the value before the vacation, the benefits were deducted also. We think that there is no objection to such a procedure. The statute, § 160.16, subd. 4 (§ 2588, subd. 4), requires that the jury's award be made not by pursuing the same procedure as the town board's, but that it be *based upon the same principles*. This we think was done. After all, the purpose is to award the landowner just compensation. The questions of damages and benefits are intimately connected with those of values. One cannot be considered without the other. The important thing is that all items be considered in their proper connection. In this view, as said in Winona & St. P. R. R. Co. v. Waldron, 11 Minn. pp. 414, 415 (539, 540), 88 Am. D. p. 109, *supra:*

"* * * the damages are a unit, although composed of integral parts, and if benefits are to be deducted at all, they must be deducted from the aggregate sum; and it would seem but just and equitable that if the same act at the same time inflicts injury and confers benefits, the one should be set off against the other in determining the compensation due for the injury; then a just and full

compensation is ascertained, and, thus ascertained, must be paid in money."

Under the instructions, the benefits were considered by the jury in arriving at their verdicts. Appellant has no ground for complaint.

■ Appellant also contends that the jury awarded excessive damages under the influence of passion and prejudice. Six witnesses, all of them farmers in the vicinity, testified that respondents were not damaged. If the jury had accepted their views, a verdict against respondents would have to stand. But there was evidence by experts for respondents that they were damaged in amounts exceeding the verdicts. We think that it would serve no useful purpose to state the testimony; it is sufficient to say that it sustains the verdicts. See, Blanton v. N. P. Ry. Co. 215 Minn. 442, 10 N. W. (2d) 382.

■ Finally, it is urged that error was committed in permitting respondent Jorgensen to show the amount of taxes he paid. This point was not assigned as a ground for a new trial and is raised for the first time on appeal. It cannot be considered. Error not assigned in a motion for new trial cannot be assigned for the first time on appeal. Amland v. Grose, 208 Minn. 596, 296 N. W. 170.

Our conclusion is that there was no error and that there should be an affirmance in both cases.

Affirmed.