*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0413**

Teresa McDonald,
Appellant,

vs.

Allina Health System d/b/a United Hospital,
Respondent.

**Filed October 26, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CV-14-5784

Teresa McDonald, Cottage Grove, Minnesota (pro se appellant)

Sara Gullickson McGrane, Jessica J. Nelson, Jessica M. Marsh, Felhaber Larson, Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Pro se appellant challenges the district court's dismissal of 12 claims arising from the termination of her employment with respondent. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

On May 6, 1996, appellant Teresa McDonald began working as a Health Unit Coordinator for respondent Allina Health System d/b/a United Hospital. On May 3, 2011, Allina terminated McDonald's employment for cause. On May 1, 2013, McDonald commenced an action against Allina in the United States District Court for the District of Minnesota, acting pro se and alleging various claims arising from her termination. The court dismissed McDonald's complaint without prejudice for lack of subject-matter jurisdiction. *McDonald v. Allina Health Sys.*, No. 13-CV-1031, 2013 WL 5999407, at *1 (D. Minn. Nov. 12, 2013).

On January 13, 2014, McDonald filed charges of discrimination against Allina with both the Equal Employment Opportunity Commission (EEOC) and the Minnesota Department of Human Rights (MDHR). The EEOC and the MDHR dismissed McDonald's charges as untimely and, on January 22, issued notices of McDonald's right to sue. On April 21, McDonald filed a complaint against Allina in Ramsey County District Court, acting pro se, and moved for default judgment despite having failed to effectuate service of process on Allina. The court denied McDonald's default-judgment motion and directed McDonald to complete proper service on Allina and file an affidavit of service by July 30. McDonald did not comply with the court's order, and the court dismissed McDonald's complaint without prejudice.

On August 19, 2014, McDonald filed a summons and complaint—with 31 pages of attachments—against Allina in Ramsey County District Court, acting pro se and asserting 12 claims arising from her employment termination. On August 29, McDonald

served Allina with the summons and complaint. Allina moved to dismiss for failure to state a claim upon which relief can be granted, arguing that most of McDonald's claims were time-barred and that none of the claims stated a viable claim for relief under Minn. R. Civ. P. 12.02(e). The court applied the standards governing a rule 12.02(e) motion to dismiss for failure to state a claim upon which relief can be granted, concluded that ten of McDonald's claims were time-barred and that the remaining two otherwise failed to state a claim, granted Allina's motion to dismiss, and entered judgment dismissing McDonald's complaint with prejudice.

McDonald filed a notice of appeal on March 9, 2015. On March 19, Allina filed a notice and application for taxation of costs and disbursements in Ramsey County District Court. McDonald filed no objection. The district court found that "all [c]osts" were reasonable, allowed their taxation, and entered judgment on costs and disbursements on April 3.

**D E C I S I O N**

***Failure to state a claim***

"A district court may only dismiss a complaint under Rule 12.02(e) if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *Finn v. All. Bank*, 860 N.W.2d 638, 653 (Minn. 2015) (quotation omitted). No facts exist which would support granting the relief demanded "when it is clear and unequivocal from the face of the complaint that the statute of limitations has run on . . . the claim[]." *See Jacobson v. Bd. of Trs. of the Teachers Ret. Ass'n*, 627 N.W.2d 106, 109 (Minn. App. 2001), *review denied* (Minn.

3

Aug. 15, 2001). "The statute of limitations begins to run on a claim when 'the cause of action accrues.'" *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011) (quoting Minn. Stat. § 541.01 (2010)). "A cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." *Id.*

"When a case is dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim for which relief can be granted, [appellate courts] review the legal sufficiency of the claim de novo to determine whether the complaint sets forth a legally sufficient claim for relief." *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 692 (Minn. 2014). In so doing, "[appellate courts] consider only those facts alleged in the complaint, accepting those facts as true and construing all reasonable inferences in favor of the nonmoving party." *Id.* "We are permitted, however, to consider documents that are embraced by the complaint, including pleadings and orders in an underlying proceeding." *Greer v. Prof'l Fiduciary, Inc.*, 792 N.W.2d 120, 126–27 (Minn. App. 2011). "[P]ro se litigants . . . are held to the same rules and standards as attorneys." *Davis v. Danielson*, 558 N.W.2d 286, 287 (Minn. App. 1997), *review denied* (Minn. Mar. 18, 1997).

*Count 1: Defamation*

> To establish the elements of a defamation claim in Minnesota, a plaintiff must prove that: (1) the defamatory statement was communicated to someone other than the plaintiff; (2) the statement is false; (3) the statement tends to harm the plaintiff's reputation and to lower the plaintiff in the estimation of the community; and (4) the recipient of the false

statement reasonably understands it to refer to a specific individual.

*McKee v. Laurion*, 825 N.W.2d 725, 729–30 (Minn. 2013) (quotations and citation omitted). A defamatory statement may be published by its placement in a company's files. *See McGovern v. Cargill, Inc.*, 463 N.W.2d 556, 557–58 (Minn. App. 1990) (referring to company's alleged placement of defamatory material in its files as "the original publication" of that material). A defamation claim accrues at the time of such publication. *Id.* at 558. A claim of defamation must be asserted within two years of its accrual. *See* Minn. Stat. § 541.07 (2014) (providing that actions for libel and slander "shall be commenced within two years").

McDonald's complaint asserts a claim for defamation apparently arising from documents generated by Allina in connection with McDonald's termination. Every such document that is referenced in or attached to the complaint is dated no later than May 9, 2011. McDonald did not commence the present action until August 29, 2014, more than three years after the claim accrued. *See McGovern*, 463 N.W.2d at 557−58. The district court therefore did not err in concluding that McDonald's defamation count failed to state a claim upon which relief can be granted.

*Counts 2 and 3: "Retaliation/Reprisal" and "Harassment"*

Under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01–.44 (2014), an employer engages in an unfair discriminatory practice by "discharg[ing] an employee" or by "discriminat[ing] against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment" on

5

the basis of sex, age, or other protected status. Minn. Stat. § 363A.08, subd. 2. An employer also engages in an unfair discriminatory practice by "intentionally engag[ing] in any reprisal against any person because that person . . . opposed a practice forbidden under th[e MHRA] or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under th[e MHRA]." Minn. Stat. § 363A.15. "A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment." *Id.* "A claim of an unfair discriminatory practice must be brought as a civil action . . . , filed in a charge with a local commission . . . , or filed in a charge with the commissioner within one year after the occurrence of the practice." Minn. Stat. § 363A.28, subd. 3.

McDonald's complaint may attempt to assert MHRA claims of unfair discriminatory practices culminating in Allina's termination of her employment on May 3, 2011. McDonald did not file any administrative charge until January 13, 2014, and she did not commence the present action until August 29, 2014. Because McDonald did not act until nearly three years after the most recent "occurrence of the practice," *see id.*, the district court did not err in concluding that McDonald's "[r]etaliation/[r]eprisal" and "[h]arassment" counts failed to state a claim upon which relief can be granted.

*Count 4: Negligent Infliction of Emotional Distress (NIED)*

"A plaintiff may recover for [NIED] only when that plaintiff is within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury." *Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 46 (Minn. App. 2009) (quotation omitted). "The zone of danger

requirement may be replaced by an intentional tort such as defamation or another willful, wanton, or malicious act." *Oslin v. State*, 543 N.W.2d 408, 417 (Minn. App. 1996), *review denied* (Minn. Apr. 1, 1996). But when an NIED claim is based on an intentional tort rather than based on a zone of danger, the failure of the underlying intentional tort results in the failure of the NIED claim. *See id.* (affirming summary-judgment dismissal of NIED claim based on claims of defamation and battery, where defamation and battery claims were properly dismissed).

McDonald's complaint appears to assert a claim for NIED arising from Allina's conduct in terminating her employment. The complaint does not allege that McDonald was within a zone of danger of physical impact. As a result, any NIED claim must have been based on an intentional tort. *See id.* Because McDonald's defamation claim was time-barred, the district court did not err in concluding that McDonald's NIED count failed to state a claim upon which relief can be granted.

*Count 5: "Destruction of Documents"*

"Generally, a statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Lickteig v. Kolar*, 782 N.W.2d 810, 814 (Minn. 2010) (quotation omitted); *see also Summers v. R & D Agency, Inc.*, 593 N.W.2d 241, 245 (Minn. App. 1999) ("A criminal statute does not give rise to a civil cause of action unless the statute expressly or by clear implication so provides." (citing *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990))). "Principles of judicial restraint preclude [the courts] from creating a new statutory cause of action that does not exist at common law where the legislature has not either by the statute's express

terms or by implication provided for civil tort liability." *Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007) (quotation omitted).

McDonald's complaint may attempt to assert a civil claim arising from Allina's alleged violation of Minn. Stat. § 609.63 (2014), a statute criminalizing forgery. That statute contains no language to suggest that its violation gives rise to a civil claim. *See* Minn. Stat. § 609.63. The district court therefore did not err in concluding that McDonald's "[d]estruction of [d]ocuments" count failed to state a claim upon which relief can be granted.

*Count 6: "Whistleblower as amended"*

Under the Minnesota whistleblower act (MWA), Minn. Stat. § 181.932 (2014), an employer is forbidden to "discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment" on the grounds that

> the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm.

"To establish liability under the [MWA], an employee must prove three elements: '[1] statutorily protected conduct by the employee, [2] an adverse employment action by the employer, and [3] a causal connection between the two.'" *Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 657 (Minn. App. 2011) (alteration in original) (quoting *Gee*

8

*v. Minn. State Colls. & Univs.*, 700 N.W.2d 548, 555 (Minn. App. 2005)), *review denied* (Minn. Apr. 19, 2011).

McDonald's complaint appears to assert an MWA claim arising from Allina's termination of McDonald's employment. But the complaint fails to allege that McDonald engaged in statutorily protected conduct that resulted in her termination. Indeed, McDonald acknowledged at the hearing on Allina's motion to dismiss that she could not "point to any [statutorily protected conduct] that occurred before [she] w[as] fired." The district court did not err in concluding that McDonald's "[w]histleblower as amended" count failed to state a claim upon which relief can be granted.

*Count 7: "[V]iolation of code of conduct/corporate compliance"*

"[P]ersonnel handbook provisions, if they meet the requirements for formation of a unilateral contract, may become enforceable as part of the original employment contract." *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn. 1983). "The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quotation omitted). Any claim for breach of an employment contract must be asserted within two years of accrual. *See Park Nicollet Clinic*, 808 N.W.2d at 832 (stating that "[the supreme court] ha[s] consistently applied [a two-year] statute of limitations period whenever the gravamen of the action is the breach of an employment contract" (quotation omitted)).

McDonald's complaint may attempt to assert a claim for breach of employment contract arising from Allina's conduct in terminating her employment on May 3, 2011, alleging that such conduct violated Allina's own "[r]ules and obligations." McDonald did not commence the present action until August 29, 2014, more than three years after the claim accrued. *See id.* The district court therefore did not err in concluding that McDonald's "violation of code of conduct/corporate compliance" count failed to state a claim upon which relief can be granted.

*Count 8: "EPA"*

Under the Equal Pay Act (EPA), 29 U.S.C. § 206(d) (2014),

> [n]o employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . .

29 U.S.C. § 206(d)(1). A claim for negligent violation of the EPA must be asserted within two years of accrual, and a claim for willful violation of the EPA must be asserted within three years of accrual. 29 U.S.C. § 255 (2014); *see also Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579 (8th Cir. 2006) (stating that "if an employee can show that the employer willfully violated the Equal Pay Act, the statute of limitations is three years, rather than the presumptive two-year statute of limitations").

McDonald's complaint appears to assert an EPA claim of unfair discriminatory practices culminating in Allina's termination of McDonald's employment on May 3,

2011. McDonald did not commence the present action until August 29, 2014, more than three years after the latest date on which such a claim could have accrued. *See Park Nicollet Clinic*, 808 N.W.2d at 832. The district court therefore did not err in concluding that McDonald's "EPA" count failed to state a claim upon which relief can be granted.

*Count 9: "ADEA of 1967 as amended"*

The Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (2014), provides:

> It shall be unlawful for an employer—
>
> > (1) to . . . discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
> >
> > (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a). "No civil action may be commenced by an individual [for violation of the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d)(1). An EEOC charge alleging unlawful discrimination that occurred "in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice" must be filed "within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of

11

notice of termination of proceedings under State law, whichever is earlier." *See* 29 U.S.C. §§ 626(d)(1)(B), 633(b).

McDonald's complaint appears to assert an ADEA claim of age discrimination culminating in Allina's termination of McDonald's employment on May 3, 2011. McDonald did not file any administrative charge until January 13, 2014. Because McDonald did not seek an administrative remedy until nearly three years "after the [latest date on which an] alleged unlawful practice [could have] occurred," *see* 29 U.S.C. § 626(d)(1)(B), the district court did not err in concluding that McDonald's "ADEA of 1967 as amended" count failed to state a claim upon which relief can be granted.

*Count 10: "Violation of public policy"*

"In Minnesota, the employer-employee relationship is generally at-will, which means that an employer may discharge an employee for any reason or no reason and that an employee is under no obligation to remain on the job." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014) (quotations omitted). The supreme court has "recognized a narrow public-policy exception to the employment-at-will rule," under which "'[a]n employee may bring an action for wrongful discharge if that employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law.'" *Id.* (quoting *Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571 (Minn. 1987)). The public-policy exception to the employment-at-will rule derives from common law rather than statute. *See Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 454–55 (Minn. 2006) (concluding that public-policy exception provides "a cause of action with continuing

12

viability in the common law" (citing *Phipps*, 408 N.W.2d at 571)). As such, any claim based on that exception must be asserted within two years of its accrual. *Cf. Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) (concluding that two-year statute of limitations, under Minn. Stat. § 541.07 (2012), "is limited to common law causes of action not created by statute").

McDonald's complaint may attempt to assert a common-law claim for violation of public policy arising from Allina's conduct in terminating her employment on May 3, 2011, alleging that such conduct was "contrary to public policy for the rights of employment and the safety and well-being of public/patients." McDonald did not commence the present action until August 29, 2014, more than three years after the claim accrued. *See Park Nicollet Clinic*, 808 N.W.2d at 832. The district court therefore did not err in concluding that McDonald's "[v]iolation of public policy" count failed to state a claim upon which relief can be granted.

*Count 11: Intentional Infliction of Emotional Distress (IIED)*

The elements of an IIED claim are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003) (quotation omitted). A claim for IIED must be asserted within two years of its accrual. *See Wenigar v. Johnson*, 712 N.W.2d 190, 209 (Minn. App. 2006) (stating that "there is [a] two-year statute of limitations for commencing an [IIED] claim").

McDonald's complaint appears to assert a claim for IIED arising from Allina's conduct in terminating her employment on May 3, 2011. McDonald did not commence the present action until August 29, 2014, more than three years after the claim accrued. *See Park Nicollet Clinic*, 808 N.W.2d at 832. The district court therefore did not err in concluding that McDonald's IIED count failed to state a claim upon which relief can be granted.

*Count 12: "Title VII of the Civil Rights Act of 1964 as amended"*

Under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17 (2014), an employer engages in an unlawful employment practice by "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" or by "limit[ing], segregat[ing], or classify[ing] his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as employee" on the basis of sex or other protected status. 42 U.S.C. § 2000e-2(a). An employer also engages in an unlawful employment practice by "discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , [an EEOC] charge [that an employer has engaged in an unlawful employment practice] shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful

14

employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . . .

42 U.S.C. § 2000e-5(b), (e)(1). Failure to timely file such a charge bars the assertion of any related Title VII claim. *Wilson v. Brinker Int'l, Inc.*, 382 F.3d 765, 769 (8th Cir. 2004) (stating that "a claim is time-barred if it is not filed within the[] [Title VII administrative charge period]").

McDonald's complaint appears to assert a Title VII claim of unfair discriminatory practices culminating in Allina's termination of McDonald's employment on May 3, 2011. McDonald did not file any administrative charge until January 13, 2014. Because McDonald did not seek an administrative remedy until nearly three years "after the [latest date on which an] alleged unlawful employment practice [could have] occurred," *see* 42 U.S.C. § 2000e-5(e)(1), the district court did not err in concluding that McDonald's "Title VII of the Civil Rights Act of 1964 as amended" count failed to state a claim upon which relief can be granted.

*Equitable estoppel, tolling, and waiver*

McDonald appears to argue on appeal that the applicable statutes of limitation and exhaustion requirements were subject to equitable estoppel, tolling, and waiver, such that her claims were not time-barred. But McDonald asserted no recognizable argument of this nature below; in fact, she acknowledged at the hearing on Allina's motion to dismiss that she had no basis to disagree with Allina's arguments that many of her claims were time-barred. As a result, we do not address her arguments regarding equitable estoppel,

tolling, and waiver. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)).

### *Judgment on costs and disbursements*

Minnesota Rule of Civil Procedure 54.04 allows costs and disbursements to be taxed by the court administrator on the application of a prevailing party. *See* Minn. Stat. §§ 549.02, subd. 1, .04 (2014); Minn. R. Civ. P. 54.04(a), (b). "Not later than seven days after service of the application by any party, any other party . . . may file written objections to the award of any costs or disbursements sought by any other party, specifying the grounds for each objection." Minn. R. Civ. P. 54.04(c).

McDonald asks us to reverse the judgment on costs and disbursements. But McDonald failed to appeal that judgment. Moreover, she failed below to object to Allina's notice and application for taxation of costs and disbursements as required by Minn. R. Civ. P. 54.04(c). She therefore has forfeited appellate review of the judgment. *See Thiele*, 425 N.W.2d at 582.

**Affirmed.**

16